**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 16-cv-01908-CMA

CHESTER LEE RENEAU,

     Applicant,

v.

ANGEL MEDINA, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

**AMENDED ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

     This matter is before the Court on the Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (Doc. # 1) ("Application") filed *pro se* by Applicant Chester

Lee Reneau.  Mr. Reneau challenges the validity of his conviction and sentence in the

District Court for Larimer County, Colorado, Case No. 2010CR1651.  Respondents filed

an Answer (Doc. # 31), and Mr. Reneau filed a Reply (Doc. # 32).  After reviewing the

record before the Court, including the Application, Answer, Reply, and the state court

record, the Court denies the Application and dismisses this case with prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

     The Colorado Court of Appeals described the relevant factual and procedural

background of Case No. 2010CR1651 as follows:

> Defendant pleaded guilty to identity theft [a class 4 felony]
> and was sentenced to probation for two years. While on
> probation, defendant was charged with criminal mischief in
> Larimer County – Loveland case number 11M1019

1

(misdemeanor case) and first degree assault in Larimer County case number 11CR1024 (felony assault case). The probation department subsequently filed a motion to revoke defendant's probation, alleging he had violated the terms by: (1) committing criminal mischief, as reflected in the misdemeanor case; (2) committing first degree assault, as reflected in the felony assault case; and (3) failing to submit to substance tests and testing positive for THC and alcohol.

A public defender (revocation counsel) was appointed to represent defendant in the probation revocation proceedings and the felony assault case, but defendant represented himself in the misdemeanor case. While the motion to revoke probation was pending, defendant pleaded guilty in the misdemeanor case and was acquitted at trial in the felony assault case. At a later hearing, defendant admitted to violating probation by pleading guilty in the misdemeanor case. The sentencing court revoked defendant's probation and, after reviewing a presentence investigation report, sentenced him to three years in the custody of the Department of Corrections.

Defendant later filed a pro se motion for postconviction relief under Crim. P. 35(c). The district court appointed a new attorney to represent him and, after additional briefing and a hearing on the merits, denied defendant's motion for postconviction relief.

(Doc. #12-7 at 2–3). The Colorado Court of Appeals affirmed the trial court's denial of the postconviction motion. (*Id.* at 13). Mr. Reneau petitioned for a writ of certiorari from the Colorado Supreme Court, which was denied on November 23, 2015. (Doc # 12-10).

Mr. Reneau commenced this § 2254 proceeding on July 26, 2016. (Doc. # 1). He requests unconditional release. (*Id.* at 14). In support of this request, he alleges two claims with subparts:

Claim One: "Conviction Obtained in Violation of Sixth Amendment"

1(a): Mr. Reneau would not have pleaded guilty to the Loveland misdemeanor case but for ineffective assistance of trial/revocation counsel; he

was unaware, and counsel did not inform him, that a basis for revoking parole in Case No. 10CR1651 was the pending misdemeanor charge (*Id.* at 7);

1(b): trial/revocation counsel provided misleading advice which led to Mr. Reneau having to plead guilty in Case No. 10CR1651 due to pleading guilty and accepting the plea offer in the Loveland misdemeanor case; Mr. Reneau contends counsel should have advised him that he should not plead guilty and should argue violations of due process as a defense in Case No. 10CR1651 (*Id.* at 8); and

1(c): trial/revocation counsel did not file an appeal in Case No. 10CR1651, despite Mr. Reneau's request that he do so and his agreement to do so (*Id.* at 9).

Claim Two: "Conviction Obtained in Violation of the Fourteenth Amendment"

2(a): Mr. Reneau pleaded guilty to the Loveland misdemeanor charge due to false statements from the prosecutor; the prosecutor pushed for parole revocation in Case No. 10CR1651 because Mr. Reneau was found not guilty by a jury of felony assault in Case No. 11CR1024 (*Id.* at 10); and

2(b): the Larimer County District Court judge and prosecutor did not advise Mr. Reneau that probation revocation would be sought in Case No. 10CR1651 and he would be sentenced to imprisonment, if he pleaded guilty in the Loveland misdemeanor case; the prosecutor allegedly advised him that probation would not be revoked based on a guilty plea (*Id.* at 10-11).

On May 25, 2017, the Court entered an Order (Doc. # 19) dismissing Claims 1(c), 2(a), and 2(b) with prejudice as procedurally defaulted. Claims 1(a) and 1(b) remain for adjudication on the merits.

3

In the Answer addressing the merits of the remaining claims, Respondents argue that § 2254(d) bars federal habeas corpus relief. (Doc. # 31 at 14). They state that the Colorado Court of Appeals' factual determinations were supported by the record and not unreasonable. (*Id.*). They contend the Colorado Court of Appeals reasonably applied the federal legal standard for considering effectiveness of counsel and correctly determined revocation counsel "reviewed the complaint to revoke probation with [Mr. Reneau]", "fulfilled his professional duty in the identity theft case by explaining that the separate misdemeanor was one basis on which probation could be revoked", and "had good reason at the time to believe that admitting to the [probation] violation would result in, at worst, a reinstatement of probation." (*Id.* at 15–17). Respondents assert "the Supreme Court has not held that counsel renders deficient performance by failing to advise on how to plead in a case in which counsel is not even representing a defendant simply because a conviction in the case might result in a probation revocation in a case in which counsel *is* representing the defendant." (*Id.* at 16).

In the Reply, with regard to Claim 1(a), Mr. Reneau alleges revocation counsel committed perjury during the postconviction motion hearing. (Doc. # 32 at 4). More specifically, he asserts it is inconsistent that revocation counsel testified that he went over the bases for the motion to revoke probation with him, yet never gave him a copy of the motion. (*Id.*). Mr. Reneau alleges revocation counsel owed him a duty to advise him as to whether he should enter a guilty plea in the misdemeanor case. (*Id.* at 5). He claims he was "not guilty" of the misdemeanor and would have requested trial by jury in that matter. (*Id.* at 6).

As for Claim 1(b), Mr. Reneau alleges his guilty plea in the misdemeanor case was not knowing and voluntary because the court presiding over that matter did not inform him that it could cause his probation to be revoked. (*Id.* at 7). Further, he alleges the prosecution in the misdemeanor case induced him to plead guilty by promising a certain sentence. (*Id.*). Thus, he claims revocation counsel should have argued that the misdemeanor guilty plea should not constitute a probation violation because the plea agreement was breached. (*Id.* at 7-8). He states he would not have waived his right to counsel in the misdemeanor case had he reviewed the motion to revoke probation beforehand. (*Id.* at 10). He asserts that the sentencing court unfairly relied on the presentence report to find him dangerous. (*Id.* at 12). He alleges he has a medical condition that affects his voice, and he did not say he intended to kill Americans in Mexico but, instead, he intended to deal cocaine to Americans in Mexico. (*Id.*). He claims misconduct by the prosecution in the misdemeanor case. (*See id.* at 13).

## II.    <u>STANDARD OF REVIEW</u>

The Court must construe Mr. Reneau's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

5

>(2) resulted in a decision that was based on an
>unreasonable determination of the facts in light of the
>evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Reneau bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

   The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 829-30 (10th

Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is

whether the applicant seeks to apply a rule of law that was clearly established by the

Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529

U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant

state‑court decision."  *Id*. at 412.  Furthermore,

>clearly established law consists of Supreme Court holdings
>in cases where the facts are at least closely-related or
>similar to the case *sub judice*.  Although the legal rule at
>issue need not have had its genesis in the closely-related or
>similar factual context, the Supreme Court must have
>expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry under § 2254(d)(1).  *See id*. at 1018.

   If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

>A state-court decision is contrary to clearly established
>federal law if: (a) "the state court applies a rule that

6

> contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the
> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts. *Id*. at 407‑08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is

objective. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity. The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations. [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation

omitted). In conducting this analysis, the Court "must determine what arguments or

theories supported or . . . could have supported[] the state court's decision" and then

"ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.

at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before

the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2).

*See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2)

allows the Court to grant a writ of habeas corpus only if the relevant state court decision

was based on an unreasonable determination of the facts in light of the evidence

presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the

state court's factual determinations are correct and the applicant bears the burden of

rebutting the presumption by clear and convincing evidence. "The standard is

demanding but not insatiable . . . [because] '[d]eference does not by definition preclude

relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

### III.   MERITS OF MR. RENEAU'S REMAINING CLAIMS

Claims 1(a) and 1(b) allege ineffective assistance of counsel.  Clearly established federal law provides that a defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel claims are mixed questions of law and fact.  *Id*. at 698.

To establish counsel was ineffective, Mr. Reneau must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See Strickland*, 466 U.S. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id*.  It is Mr. Reneau's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id*.  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Reneau must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable.").  In determining whether Mr. Reneau has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Reneau.  *See Boyd*, 179 F.3d at 914.

"[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below the *Strickland*'s standard. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). If Mr. Reneau fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *Strickland*, 466 U.S. at 697.

In the context of a challenge to a guilty plea based on ineffective assistance of counsel, the first prong of the *Strickland* test is satisfied if the applicant "proves that counsel's advice was not within the wide range of competence demanded of attorneys in criminal cases." *Laycock v. State of N.M.*, 880 F.2d 1184, 1187 (10th Cir. 1989) (citation and internal quotation omitted). The proper standard for measuring attorney performance is reasonably effective assistance, and the applicant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 687, 689. The second prong of the *Strickland* test is met if the applicant "shows that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Laycock*, 880 F.2d at 1187 (citation omitted).

In Claim 1(a), Mr. Reneau alleges he would not have pleaded guilty to the Loveland misdemeanor case but for the ineffective assistance of revocation counsel; he contends he was unaware, and counsel did not inform him, that a basis for revoking parole in Case No. 10CR1651 was the pending misdemeanor charge.  (Doc # 1 at 7).  In other words, Mr. Reneau asks this Court to determine "whether trial counsel's failure to inform Mr. Reneau of the fact that entering a guilty plea to [the misdemeanor case] could cause Mr. Reneau's probation in [Case No. 2010CR1651] to be revoked constitutes ineffective assistance of counsel."  (Doc. # 32 at 11).

In Claim 1(b), Mr. Reneau alleges revocation counsel provided misleading advice which led to Mr. Reneau having to plead guilty in Case No. 10CR1651 due to pleading guilty and accepting the plea offer in the Loveland misdemeanor case; Mr. Reneau contends counsel should have advised him that he should not plead guilty and, instead, should have argued violations of due process as a defense in Case No. 10CR1651. (Doc. # 1 at 8).  More specifically, Mr. Reneau contends counsel should have argued his due process rights were violated by actions of the Larimer County District Attorney's office with regard to a plea agreement resolving the misdemeanor case.  (Doc. # 32 at 11).  Mr. Reneau believes the Larimer County District Attorney's office "breached" the misdemeanor plea agreement "by influencing the trial court . . . to revoke [Mr. Reneau's] probation" in Case No. 10CR1651.  (*Id.*).

In the opinion addressing Mr. Reneau's appeal of the state court order denying postconviction relief, the Colorado Court of Appeals concluded as follows:

> Defendant claims revocation counsel coerced him to admit he violated
> probation (Issue 6) by leading him to believe that, at worst, his admission
> would result in probation being reinstated (Issue 9), and that counsel failed

12

to raise an adequate defense during the revocation hearing (Issue 7). These actions, defendant argues, rendered counsel ineffective, and the district court erred by denying his motion for postconviction relief on this ground. We disagree.

To prevail on a claim of ineffective assistance, a defendant must show that (1) his attorney's performance was deficient, and (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Ardolino*, 69 P.3d at 76. Prejudice results if there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different.[5] *Strickland*, 466 U.S. at 694. Because a defendant must show both deficient performance and prejudice, his failure to show either defeats the claim. *Id*. at 700.

The district court found, with record support, that revocation counsel's performance was reasonable. Counsel testified that he reviewed the motion to revoke probation with defendant and explained the possible penalties, including prison. He did not represent defendant in the misdemeanor case and did not advise defendant whether to plead in that case. Instead, counsel focused his attention on the felony assault case, which involved more serious penalties than defendant's other cases. Defendant was acquitted in the felony assault case and the sentencing court released him on a personal recognizance bond. This led counsel to believe that if the court were to revoke defendant's probation, it would either reinstate probation or discharge defendant's sentence entirely. He therefore advised defendant, who had already pleaded guilty in the misdemeanor case, that he should admit to violating probation. The district court noted that in its experience, which was consistent with counsel's, most people are not sentenced to prison after a first probation violation for a misdemeanor offense. The record supports the district court's finding that counsel's advice was reasonable under the circumstances.

The sentencing court's comments support this conclusion. The court explained its decision to sentence defendant to prison by recounting his threatening statements and aggressive behavior reflected in the presentence investigation report,[6] and noting the lack of less restrictive alternatives that would protect the community from defendant, who had been diagnosed with a variety of mental disorders but refused to take medication. The court concluded that in light of defendant's threats and aggressive behavior, it could not allow him "to just be back on the street again." Had defendant behaved differently, the court may well have reinstated probation or discharged defendant's sentence as revocation counsel expected.

The record suggests that defendant's actions motivated the court to choose a more restrictive sentence. The record supports the district court's conclusion that counsel performed competently. We therefore affirm the district court's ruling without analyzing the second prong of the *Strickland* test. *See id.*

n.5    Although our supreme court suggested otherwise in *People v. Naranjo*, 840 P.2d 319, 325 (Colo. 1992), more recent cases have clarified that a defendant need not prove prejudice by a preponderance of the evidence. *People v. Washington*, 2014 COA 41, ¶ 23; *see Hagos v. People*, 2012 CO 63, ¶ 17 (A defendant is not required "to show that the deficient performance more likely than not altered the outcome of the case."); *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").

n.6    For example, the court noted that defendant told a presentence interviewer "he thinks about moving to Mexico and killing white American tourists" and, "[w]hen asked how he feels if he was sentenced to AIIM or Community Corrections, he responded, 'I will be in Mexico killing Americans within a week.'" The court also noted that defendant had sent threatening letters to his probation officer and that he was banned from a treatment center until he "became stabilized on medication."

(Doc. # 12-7 at 8–12).

The Colorado Court of Appeals applied clearly established federal law when resolving Mr. Reneau's ineffective assistance of counsel claims under the *Strickland* standard.  As further explained below, Mr. Reneau fails to demonstrate that the state court's rejection of the ineffective assistance of counsel claims was contrary to or an unreasonable application of clearly established federal law under § 2254(d)(1) or based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

The facts cited by the Colorado Court of Appeals are supported by record evidence.  Review of the motion to revoke probation demonstrates there were three

bases for revocation: "(1) committing criminal mischief, as reflected in the misdemeanor case; (2) committing first degree assault, as reflected in the felony assault case; and (3) failing to submit to substance tests and testing positive for THC and alcohol."

(Doc. # 12-7 at 2); *see also* Verified Complaint to Revoke Probation, Court File at 000024. Revocation counsel testified at the hearing on the postconviction motion that he was appointed to defend Mr. Reneau with regard to the motion to revoke probation and the felony charge of first degree assault. *Tr.*, Nov. 2, 2012, at 13:20-24. He did not represent Mr. Reneau with regard to the misdemeanor charge and, at some point, became aware Mr. Reneau proceeded *pro se* in that matter.[1] *Id.* at 15:23-16:10. As for how he advised Mr. Reneau, revocation counsel testified as follows:

> Q. . . . Did you spend any time discussing the revocation with Mr. Reneau?
> A. When I was initially appointed, I took the motion to revoke probation and reviewed that with Mr. Reneau.
> Q. Do you recall when that was?
> A. No. But --
> Q. Do you have that on your file?
> A. I do.
> Q. Do you want to refer to that?
> A. Let's see, says I was appointed, entered our appearance on August 8, 2011. And on that same day, I went up, tried to visit him; but my notes say the visiting room was occupied and I couldn't visit him. So I visited him again on August 15th; and my contemporaneous note at the time says, reviewed motion to revoke probation, potential penalties, rights and options.

---

[1] Revocation counsel testified that even though he did not represent Mr. Reneau in the misdemeanor matter, "Mr. Reneau told me that he put his head through the wall in that motel in Loveland. He told me he committed that offense; that that's how it happened. And so I didn't give him any illegal advice about what to do there, but he told me he had done that." *Tr.*, Nov. 2, 2012, at 22:17-21. Mr. Reneau's testimony when he pleaded guilty to the misdemeanor charge of criminal mischief corroborates this: "I was drunk and in a bad mood, and I accidentally got mad and headbutted a wall and put a hole in the wall with my head." Exhibits Sealed, *Tr.*, Sept. 8, 2011, at 3:12-18. Therefore, actual innocence is not at issue in this case. By his admission, Mr. Reneau committed the actions underlying the misdemeanor charge, thereby violating the terms of his probation in Case No. 2010CR1651.

. . .

Q. Did you give him any advice with regard to the Loveland misdemeanor case as to how it would affect the revocation of probation?

A. I'm sure I did, but I don't have a specific recollection. I mean, I know when I go over -- I go over each of the allegations with a client and how that allegation might impact the ultimate outcome of the motion to revoke; but again, the first-degree assault case was a more pressing matter.

Q. Do you recall telling Mr. Reneau that you're not worried about the misdemeanor because you don't represent him on that case and that you wouldn't be worried about it anyway because you're more worried about the felony?

A. You know, words to that effect. I don't know that it was exactly like that. But yeah, I was not particularly worried about either, the misdemeanor or the revocation, frankly, because if he was convicted of that first-degree assault, that carried a mandatory ten years in prison; and that was my focus.

. . .

Q. Do you recall what your advice was with regard to how to handle the revocation matter?

A. Generally speaking, yes.

Q. Can you tell the Court what your general advisement is?

A. Well, Chester had spent eight months in jail waiting for trial in the other case. Okay. Several months. And then the judge released him on a PR bond in the case; and so frankly, I thought the judge would sentence him to some time served for the violation on this case, put him back on probation.  He had just been acquitted, just spent several months in jail for a crime that he didn't commit, and the judge released him on a PR bond. And so I thought – told him that I think the judge will be lenient; that the judge is likely to put you back on probation or sentence you to time served. You have already pleaded guilty to the misdemeanor; you've been acquited [sic] of the other.  I think if you look at the record when he confessed the motion to revoke, he continued to deny the allegations of the hot UAs, the technical violations, and admitted only the misdemeanor conviction in Loveland. He had already served 75 days for that. So --

Q. Was that your understanding of what his sentence was with regard to the guilty plea in the Loveland case?

A. It was. I think it was a jail sentence and close. But I can't -- I don't remember the exact number of days. But I think he was sentenced to time served and that case was closed. He had already pleaded guilty. I told him that I think your best bet is just to admit the violation of probation as a result of that conviction in Loveland, ask for a presentence report; and I'm hopeful that the judge will sentence you to time served or put you back on probation, at worst, in this case.

*Tr.*, Nov. 2, 2012, at 15:3–18, 17:1–19, 18:22–20:5.  Thus, in summary, revocation counsel testified that he advised Mr. Reneau with respect to each basis in the motion to revoke probation and, after the felony assault case was decided in his favor, advised Mr. Reneau to admit to a violation of probation based on the confessed misdemeanor, with the expectation that the sentence would be time served or probation.  Revocation counsel stated that before Mr. Reneau confessed the motion to revoke and at sentencing, he advised him that prison was possible, though unlikely.  *Id.* at 23:10–15.

Mr. Reneau testified at the postconviction motion hearing that revocation counsel never provided him with a copy of the motion to revoke probation.  *Id.* at 27:7–8.  He also testified revocation counsel did not give him any advice with regard to the misdemeanor, even though it was a basis for revocation.  *Id.* at 34:8–12.  He stated revocation counsel told him he could get probation at worst as a result of the probation violation, but "at no point did he indicate any sentence in the Department of Corrections."  *Id.* at 34:16–35:10.

 The postconviction court acted as fact finder and, having heard testimony from revocation counsel and Mr. Reneau, concluded counsel's representation was reasonable under the circumstances.  The court stated:

> Mr. Townsend advised Mr. Reneau of the consequences of his admission
> to the probation revocation. He did not advise him of the consequences of
> his plea in the misdemeanor case. And again, the reason he did not
> advise Mr. Reneau was because he didn't represent him in that case.
> . . .
> I find as a matter of fact that -- whether or not Mr. Townsend had a duty to
> advise with regard to the consequences of his plea in the misdemeanor
> case; I find that he did not.
> What's unfortunate about this case is that he did that in the context of a
> more serious first-degree assault case in the context of his experience that
> most people, consistent with everybody else in the courtroom, I think,

including this Court -- that most people do not get sentenced to prison on a violation of probation based on a misdemeanor and a first violation. And, unfortunately, Mr. Townsend was wrong and Mr. Reneau, indeed, was sentenced to the Department of Corrections for a period of three years based upon his probation revocation and his admission that he did, in fact, commit that misdemeanor while on probation.

*Id.* at 45:25-46:4, 47:16-48:6.

State court findings of fact are presumed correct, and this Court must defer to those findings unless Mr. Reneau overcomes that presumption by clear and convincing evidence, which he has not done. *See* § 2254(e)(1); *see also Miller-El*, 545 U.S. at 240.

Further, Mr. Reneau has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Revocation counsel advised Mr. Reneau of the grounds for revoking probation and focused his efforts on defending Mr. Reneau in the felony assault matter which bore serious consequences. Revocation counsel did not represent Mr. Reneau in the misdemeanor proceeding; Mr. Reneau represented himself and pleaded guilty. On the basis of the misdemeanor guilty plea, revocation counsel recommended confessing to a probation violation and, based upon his experience, believed that sentencing would likely be time served or probation. There is nothing in the record before this Court indicating that revocation counsel's performance was not "well within the range of competence demanded of counsel in criminal cases." *Laycock*, 880 F.2d at 1187 (the applicant "admitted both the robbery and the shooting, was identified by witnesses, and had a prior history of criminal activity" thus the advice to accept a plea bargain was reasonable).

Although revocation counsel's advice regarding the expected sentence for violating probation proved incorrect, "a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) (collecting cases). Revocation counsel conceded that he expected the sentencing court to sentence Mr. Reneau to time served or probation and advised his client consistent with that expectation. Instead, the sentencing court resentenced Mr. Reneau to three years in the Colorado Department of Corrections plus three years of mandatory parole. Judgment of Conviction, Sentence, Amended, Court File at 000034. The sentencing court explained that Mr. Reneau's actions and statements influenced its judgment. At sentencing in Case No. 10CR1651, the court cited a letter from a doctor with Larimer County Mental Health who evaluated Mr. Reneau. Exhibits Sealed, *Tr.*, Jan. 27, 2012 at 11:3-13:20. The doctor stated Mr. Reneau "will never voluntarily take medication to stabilize his mental health condition," recounted Mr. Reneau's statements that he thought about moving to Mexico to kill white American tourists, and concluded Mr. Reneau's "behavior continues to be bizarre and delusional and aggressive at times." *Id.* The sentencing court explained it could not allow Mr. Reneau "to just be back on the street again, given that he has made threats, that his behavior is aggressive and threatening and frightening." *Id.* at 14:3-6. The sentencing court stated,

> I believe the only appropriate option in this case is to sentence Mr. Reneau to the Department of Corrections . . . for three years. . . . [H]is actions and his behaviors and his statements and past history is [sic] dangerous.

*Id.* at 15:8-19.

The Colorado Court of Appeals considered these record facts under the *Strickland* standard. It determined revocation counsel's performance was reasonable and competent, and Mr. Reneau's actions, not those of his lawyer, "motivated the court to choose a more restrictive sentence." (Doc. # 12-7 at 11). Nothing in the record before this Court establishes that the Colorado Court of Appeals' decision regarding the first prong of the *Strickland* standard was unreasonable.[2] *Harrington*, 562 U.S. at 101. Because the Colorado Court of Appeals "reasonably applied the *Strickland* standard to these claims, habeas relief is not available." *Rosales v. Milyard*, 541 F. App'x 874, 881 (10th Cir. 2013) (citation omitted).

Mr. Reneau's arguments in the Reply do not change this result. Mr. Reneau argues at length that the court and prosecution in the misdemeanor action acted unconstitutionally. (*See generally* Doc. # 32). As set forth in Order to Dismiss in Part, such claims are procedurally defaulted and not part of this Court's federal habeas corpus review. (*See* Doc. # 19 at 12–16).

Mr. Reneau argues his case "should fall within the Brady v. Maryland line of cases." (Doc. # 32 at 4). *Brady* concerns allegations that the prosecution suppressed material evidence favorable to the defense. *E.g., United States v. Acosta-Gallardo*, 656 F.3d 1109, 1117 (10th Cir. 2011) (citations omitted) (referring to *Brady v. Maryland*, 373 U.S. 83 (1963)). There are no such allegations at issue in this case.

---

[2] The Colorado Court of Appeals did not reach the second prong of *Strickland* requiring a showing of prejudice, as it affirmed the district court's conclusion that counsel performed competently. (Doc. # 12-7 at 11–12). Thus, this Court will not make findings regarding whether Mr. Reneau was prejudiced by revocation counsel's representation. *Cullen*, 563 U.S. at 181 ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); *Strickland*, 466 U.S. at 697 (If an applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.).

Likewise, Mr. Reneau's reliance on *United States v. Gordon* and *Glover v. United States* is misplaced. (Doc. # 32 at 5, 6). In *United States v. Gordon*, 156 F.3d 376 (2d Cr. 1998), the U.S. Court of Appeals for the Second Circuit affirmed habeas corpus relief to a defendant whose counsel advised he expected a sentence to be imposed of 120 months' imprisonment, when the applicable range was 262 to 327 months. 156 F.3d at 377-78. The defendant opted to go to trial rather than accept a plea offer of 92 to 115 months based on this advice. *Id*. Here, Mr. Reneau does not allege a plea offer was outstanding in Case No. 2010CR1651. Instead, the Colorado Court of Appeals affirmed the district court's factual findings that revocation counsel "advised defendant, who had already pleaded guilty in the misdemeanor case [in which he proceeded *pro se*], that he should admit to violating probation," and revocation counsel "reviewed the motion to revoke probation with defendant and explained the possible penalties, including prison." (Doc. # 12-7 at 10). As noted above, this Court must presume the correctness of the state court's findings of fact. 28 U.S.C. § 2254(e)(1).

In *Glover v. United States*, 531 U.S. 198 (2001), the Supreme Court addressed an increase in a prison sentence resulting from defense counsel's failure to challenge a calculation under the federal Sentencing Guidelines. 531 U.S. at 199-200. The *Glover* court rejected the notion that a sentence increase must be a certain amount to meet "some baseline standard of prejudice." *Id*. at 203. The *Glover* court considered "the sentencing calculation itself, a calculation resulting from a ruling which, if it had been error, would have been correctable on appeal." *Id*. at 204. Here, Mr. Reneau was not sentenced under the federal Sentencing Guidelines, nor was a similar calculation at issue. The Supreme Court made clear that *Glover* was "not a case where trial

strategies, in retrospect, might be criticized for leading to a harsher sentence," which is what Mr. Reneau challenges in the instant case. *Id.* at 204; *see also United States v. Washington*, 619 F.3d 1252, 1259 (10th Cir. 2010) (courts "distinguish ordinary errors in applying the guidelines from complete unfamiliarity with their basic structure and mechanics and conclude that the latter may amount to ineffective assistance of counsel") (citations omitted).

This Court is not swayed by Mr. Reneau's argument that he did not know the misdemeanor charge would impact probation and would have acted differently had revocation counsel so advised him. (*See generally* Doc. # 32). Mr. Reneau had independent knowledge of the terms of probation. Review of the Conditions of Supervised Probation imposed in Case No. 10CR1651 shows that Mr. Reneau was subject to terms including "remain law abiding" and "no alcohol or illegal substances." Court File, Conditions of Supervised Probation, at 000023. Mr. Reneau signed the Conditions under a statement of understanding that "if I violate these conditions, I may be brought before the Court for revocation and imposition of sentence." *Id.*

## IV. CONCLUSION

Based on the above findings, the Court concludes that the Colorado Court of Appeals' decision was not contrary to or an unreasonable application of a clearly established rule of federal law or based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d). Mr. Reneau's claims lack merit and the § 2254 Application must be dismissed. Because the Court has determined that the § 2254 Application can be resolved based on the existing record, no evidentiary hearing is warranted, nor is it necessary to appoint counsel. *See Torres v. Mullin,* 317 F.3d 1145, 1161 (10th Cir.

2003); Fed. R. Governing Section 2254 Cases 8(a) and 8(c). This is not a case where the state court applied an improper legal standard and disputed issues of fact remain for the federal district court. *Cf. Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014) (remanding case to district court for evidentiary hearing where the state appellate court's decision did not survive scrutiny under § 2254(d)(1), and disputed issues of fact existed that precluded the court of appeals from completing a de novo review of petitioner's ineffective assistance of appellate counsel claim).

For the reasons stated herein, it is

**ORDERED** that Mr. Reneau's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1) is DENIED and this case is DISMISSED WITH PREJUDICE. It is further

**ORDERED** that that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).


DATED: April 24, 2018                    BY THE COURT:

                                         _____
                                         CHRISTINE M. ARGUELLO
                                         United States District Judge